IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

AT&T CORP.,

                Plaintiff,

v.                                           CIVIL ACTION NO. 2:06-cv-00074

MCKAMISH, INC., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Johnson Controls Inc., Carrier Corporation, and McKamish Inc.'s motion to dismiss [Docket 15]. For the reasons stated herein, the court **GRANTS** the defendants' motion and **DISMISSES** them from the case.

**I.     Factual Background**

AT&T filed the declaratory actions against the defendants claiming that each defendant should indemnify and defend it in an underlying state action. Verizon brought the underlying state action in the Circuit Court of Kanawha County against AT&T, McKamish Inc. ("McKamish"), Carrier Corporation ("Carrier"), Johnson Controls, Inc. ("Johnson"), LLI Technologies, Inc., Air Enterprises, Inc., and Elco Plumbing and Heating, Inc., on December 13, 2002 claiming, that each company negligently caused damages to Verizon's office. Thereafter, the defendants filed cross claims against each other seeking indemnification on various grounds. Specifically, AT&T filed crossclaims against McKamish, Johnson, and Carrier on June 10, 2003. AT&T also filed a motion

to dismiss Verizon's claims against AT&T.  On March 2, 2006, the Circuit Court of Kanawha County denied the motion to dismiss.  On March 21, 2006, after the question of federal abstention was raised in conversations with AT&T's counsel, AT&T filed an Amended Complaint.  In its Amended Complaint AT&T added a declaratory action and breach of contract claim against Pennsylvania Manufacturers Association Insurance Company, McKamish's insurer.

**II.     Discussion**

Johnson, Carrier, and McKamish argue the court should dismiss the declaratory actions because the state court can adjudicate the claims in the underlying action.  AT&T claims that the court should exercise its discretion to retain the actions.

Under the Declaratory Judgment Act (D.J.A.), "[A]ny court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2000) (emphasis added).  Thus, as the Supreme Court makes clear, the exercise of jurisdiction under the D.J.A. is discretionary, not mandatory: "[the D.J.A.] creates an opportunity, rather than a duty." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).  "This discretion, while not unbounded, is especially crucial when, as here, a parallel or related proceeding is pending in state court." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 296 (4th Cir. 2005).  In *Continental Casualty Co. v. Fuscardo*, 35 F.3d 963 (4th Cir. 1994), a pre-*Wilton* case, the Fourth Circuit reiterated the considerations that should guide a district court in deciding whether to exercise or decline jurisdiction over a declaratory judgment action involving coverage issues during the pendency of related litigation in state court:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state court; (2) whether the issues raised in the

> federal action can be more efficiently resolved in the pending state action; (3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and (4) whether the federal action is being used merely as a device for "procedural fencing," i.e., to provide another forum in a race for res judicata.

*Id.* at 966 (citing *Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 377 (4th Cir. 1994)). These "*Nautilus*" factors address traditional concerns about federalism, efficiency, and comity, as well as an additional concern over a type of forum shopping. Although a district court has greater discretion to decline jurisdiction post-*Wilton* than under previous Fourth Circuit precedent, the factors reiterated in *Fuscardo* are still useful to guide the district court's discretion. *See Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258–59 (4th Cir. 1996) (noting district court's broader discretion under *Wilton*; discussing previous factors); *Gatewood Lumber, Inc. v. Travelers Indem. Co.*, 898 F. Supp. 364, 368 (S.D. W. Va. 1995) (noting that post-*Wilton,* the Fourth Circuit's previous framework is not rigid and binding, but still provides a useful guideline). Accordingly, the Court will address these factors in turn.

*A.*  *State Interest*

The questions before the court involve purely state law matters. "There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case." *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1997). "[I]n declaratory actions Congress has afforded the federal courts a freedom not present in ordinary diversity suits to consider the state interest in having state courts determine questions of state law." *Id.* at 238. However, if the relevant state law is not problematic or difficult, the state's interest in having these issues decided in state court are weakened. *Centennial Life Ins. Co.*, 88 F.3d at 258. The defendants do not dispute that the relevant state law

in the case at hand is not problematic or difficult. Accordingly, the court **FINDS** that the first factor is neutral, favoring neither exercise or abstention of the court's jurisdiction.

*B.     Efficiency*

The Fourth Circuit instructs the district court to examine the "scope" of the underlying state action, *Fuscardo*, 35 F.3d at 967, and to determine whether "its resolution of the declaratory action will settle all aspects of the legal controversy" in deciding whether "the inherent appeal of having all litigation stemming from a single controversy resolved in a single court system" prevails. *Mitcheson,* 955 F.2d at 239. AT&T brought counterclaims for indemnity and defense originally in the state action. While these counterclaims may not be the exact claims for indemnity and defense that are brought in this action,[1] the claims for indemnity and defense contain many of the same issues and facts that the state court will litigate. Moreover, many of the claims for indemnification and defense depend on a determination of which parties were negligent. Clearly, the state court that has had these claims or claims very similar to them before it for more than three and a half years can more efficiently adjudicate these claims. The court **FINDS** that the factor of efficiency weighs heavily in favor of declining jurisdiction.

*C.     Entanglement*

Because the state court has the same or substantially similar indemnity and defense claims pending, claim preclusion or issue preclusion could arise if this court adjudicated the claims. "Such issue preclusion will likely 'frustrate the orderly progress' of state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need

---

[1] At least one claim for indemnity and defense in this action against Carrier is the exact claim for indemnity and defense in the state case.

of full scale resolution.'" *Mitcheson*, 955 F.2d at 239 (citing *Pheonix Ins. Co. v. Harby Marina, Inc.*, 294 F. Supp. 663, 664 (N.D. Fla. 1969)). A state court consulting federal law to determine the preclusive principles at work creates further entanglement. *Id.* at 240. Unnecessary entanglement in the case at hand is almost certain if this court retains jurisdiction to hear the indemnity and defense claims substantially similar to those already pending in state court. As a result, the court **FINDS** that the entanglement factor also weighs heavily in favor of declining jurisdiction.

*D.     Procedural Fencing*

"The object of the [D.J.A.] is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937). Accordingly, courts should be weary of attempts at "procedural fencing." Verizon filed its original action against AT&T and other defendants in state court in December 2002. In June 2003, AT&T asserted cross claims in the state action that are the same or substantially similar to the ones claimed in this action. AT&T also filed a motion to dismiss in the state action. In February 2006, AT&T filed the pending action in this court. This sequence and the fact that the underlying state suit involves nonremovable questions of state law "indicates that the federal declaratory action may have been used as a form of procedural fencing, i.e., forum shopping." *Fuscardo*, 35 F.3d at 968–69 n.5. Particularly compelling in this case is that AT&T brought and litigated the same or substantially similar claims in the state court for two and one half years before filing the case at hand. These facts indicate that AT&T was unhappy with the state court and may have filed the pending action to litigate the claims in another forum. It is probable that AT&T's declaratory action

is "procedural fencing." Accordingly, the court **FINDS** that the "procedural fencing" factor weighs heavily against exercising jurisdiction.

Because three of the four *Nautilus* factors weigh heavily against exercising jurisdiction, the court **GRANTS** the defendants' motion to dismiss and exercises its discretion to decline jurisdiction over the claims against Johnson, Carrier and McKamish. Accordingly, the court **DISMISSES** Johnson, Carrier and McKamish from the case.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:      June 28, 2006

                JOSEPH R. GOODWIN
                UNITED STATES DISTRICT JUDGE